THE PEOPLE *ex rel.* DUFFIELD *vs.* HOLMES, State Treasurer.

On application for a peremptory mandamus commanding the State Treasurer to pay the relator such sum as he was entitled to, as holder of some of the circulating notes of the Government Stock Bank, out of the avails of the stocks deposited with the Treasurer, &c.; it was objected that the affidavit in support of the application did not show that the said notes were countersigned as required by law. But *held*, that an averment in the affidavit that such notes were issued by the bank, necessarily implied, that they were first duly countersigned as required by the bank charter.

By the charter of the Government Stock Bank, after the stocks deposited with the State Treasurer for securing the circulating notes of the bank have been sold pursuant thereto, and the avails deposited in the Treasury, it is made the duty of the Treasurer forthwith to apply such proceeds towards the payment of such circulating notes, although the bank has been declared insolvent, a receiver appointed, and the notice required by the 12th section of the charter in such case, published.

The circulating notes are not such claims as require proof on their presentation to the Treasurer, within the provisions of sec. 12 of the charter.

Application for a mandamus.

The facts of the case, sufficiently appearing in the opinion of the Court, it is not necessary to recite them here.

*G. V. N. Lothrop*, for relator.

*J. V. Campbell*, for respondent.

By the Court, GREEN, P. J.

It is objected on the part of the respondent, that the affidavit of the relator, upon which the motion for a mandamus is

founded, does not state or show that the bills or notes presented to the Treasurer for payment, or any of them, were countersigned or registered as the circulating notes of the Bank are required by the 6th and 7th sections of the act of incorporation, to be countersigned and registered.

They are described in the affidavit of the relator, as "Bank bills, issued by the corporation known as the President, Directors, and Company of the Government Stock Bank, located at Ann Arbor."

It is not denied by the respondent, that the notes so presented to him were in fact countersigned and registered: on the contrary, he admits that on the 25th day of January, 1855, said Duffield presented to him a package of bills, or notes, purporting to be the circulating notes of said Bank, and demanded payment, &c., as set forth in his affidavit.

The Bank could not lawfully issue or circulate its notes until they had been first countersigned by the State Treasurer; and hence notes described as Bank bills, issued by that corporation, will, in an application of this kind, be taken to mean such bills only, as it was authorized to issue, and none other.

It is insisted on behalf of the respondent, that although the bills held by the relator should be regarded as the proper circulating notes, or bills of the Bank, yet that a Receiver, having been appointed under the 12th section of the charter of the Bank, and he, the respondent, having given the notice required by that section, calling on all persons who have claims against said Bank, to make legal proof, &c., he cannot be required to pay any of the notes of said Bank, or any rateable proportion thereof, until the expiration of one year from the first publication of such notice. (*Laws of* 1849, 252.)

This position is not in accordance with the evident intent of the Legislature. The 7th section provides that if said corporation shall at any time, or under any pretence, refuse,

69

on demand at its office, during the usual and regular banking hours, to pay any of its notes in the lawful currency of the United States, the holder of said notes may make and file his affidavit of that fact, with the State Treasurer, who shall thereupon give public notice that the notes of said Bank will be redeemed at his office. He is to sell the stocks deposited with him as security, within twenty days, at public or private sale. He is required to pay the full amount of the notes or bills of the Bank, out of any money he may receive, whether from the sale of stocks or other assets of the Bank, or from the receiver or receivers; and for any deficiency, the stock-holders are to be prosecuted upon their individual liability.

The stocks deposited with the State Treasurer, are for security of the circulating notes, by the Treasurer countersigned and delivered to the Bank, and are to be held by him *exclusively* for the purpose, until such notes are redeemed, except as otherwise provided in the charter. These circulating notes are not claims against the Bank which require *proof*, or upon which a rateable dividend of the moneys paid over by the receiver or receivers, is to be made; but such dividend is required to be made on all such claims as may have been *proved* under the provisions of sec. 12, *after a full provision shall have been made for redeeming the circulating notes of the Bank*. Such notes bear upon their face the official signature of the State Treasurer, and were intended to pass from hand to hand as the representative of money; and every man to whom they might be offered, is presumed to be able to determine their genuineness upon inspection. It would be evidently unreasonable, therefore, to require the holders of them to prove such notes before the Treasurer, upon presenting them to him for redemption; and such, we think, is not the requirement of the law.

If there should be any deficiency in the proceeds of the stocks pledged, to pay the holders of its notes, the directors

and stockholders are made individually liable therefor; and for any such deficiency, the receiver or receivers are required to prosecute. They are not individually liable for any other indebtedness of the corporation.

The same refusal to pay its notes on demand, which renders it the duty of the State Treasurer, Auditor General, and Secretary of State, or a majority of them, to declare the bank insolvent, and to appoint a receiver or receivers to take possession of its assets and collect all dues and other claims belonging to the bank, &c., and to give notice calling on all persons having claims against it to make legal proof, makes it also the duty of the Treasurer thereupon to give public notice that the notes of said bank will be redeemed at his office, and within twenty days to sell so much of the stock deposited with him as shall be necessary to redeem any notes of the said bank, *and apply the proceeds of said stock to the redemption of such notes.*

A review of all these various provisions of the act of incorporation seems to show very clearly that the claim of the bill holder was intended to be placed upon an entirely different footing from any other liability of the corporation, and that the notes which were to circulate as the representative of money, were intended to be made convertible into the lawful currency of the United States without unnecessary delay, at the option of the holder.

The respondent has in his answer given a detail of many circumstances which seem to us not to have any proper relevancy to the question here involved, and which we do not deem it necessary particularly to notice.

The matter before us, divested of all collateral circumstances which have no material bearing upon it, is simply this : the respondent has in his hands as State Treasurer, a fund amounting to thirty-seven thousand six hundred and thirty dollars, which he is required by law to apply to the redemption of the circulating notes of the Government Stock Bank.

The People *ex rel.* Duffield *vs.* Holmes, State Treasurer.

The relator holds the notes of this corporation to the amount of $2,359 75, which have been presented at the State Treasurer's office for redemption, conformably to the notice given by the Treasurer pursuant to law, that the notes of said bank would be redeemed at his office. The respondent refuses to pay him the amount of these notes, or any proportion of them. Neither the bank, nor any assignee, or person interested in the assets or property of the corporation, has made any claim, or put forth any pretension that the proceeds of the sale of stocks in the hands of the Treasurer are not legally applicable to the redemption of its circulating notes, and it is manifest from the facts as set forth in the respondent's answer, that there can be no plausible ground for any such claim or pretension. Upon this State of facts the relator asks that the State Treasurer may be compelled to pay him such sum as he is entitled to, on the amount of notes held by him, out of the proceeds of the sale of stocks in his hands, having reference to the whole amount of notes countersigned and issued by the State Treasurer, and still outstanding and unredeemed. What if there may have been an over issue of notes by the late Treasurer, as has been rumored, and as the respondent believes, (though he does not furnish any substantial evidence of the fact.) The result would be only to render the amount to which the relator is entitled out of the fund on hand so much the less, and not that he would be entitled to nothing.

That the late Treasurer may have countersigned and delivered bills, and received stocks as security, in the city of New York, or issued new bills upon the surrender and destruction of those previously issued, or given up to the Bank a portion of the stocks, upon the surrender to him of an equal amount of the notes of the Bank, which had been previously issued by him for circulation; or that he should have delivered some of the stocks to bill-holders, in redemption of circulating notes, at the market value of such stocks, whether right-

fully or wrongfully, cannot affect the question now before us. However these facts may be, the avails of the remaining stocks, which have been sold for that purpose, ought to be applied, so far as they will go, towards the redemption of the outstanding circulating notes of the Bank, which were countersigned, registered and issued by the Treasurer; and if there should be a deficiency for that purpose, it ought to be collected without delay, from the officers and stock-holders of the Bank.

A peremptory mandamus must issue, commanding the respondent to pay to the relator such sum as he is entitled to on $2,359 75-100 of the circulating notes of the Government Stock Bank, out of the proceeds in his hands, arising from the sale of the stocks deposited for security of such notes, having reference to the whole amount of the circulating notes of said Bank, countersigned, registered and delivered *to the Bank by the State Treasurer*, and still outstanding and unredeemed.